[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-11361

Non-Argument Calendar

_____

SORAYA BARKER,
Individually and on behalf of similarly situated persons,

                                        Plaintiff-Appellee,

*versus*

WBY, INC.,
d.b.a. Follies,
STEVEN YOUNGELSON,
SURREY WHITE,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

2                     Opinion of the Court                24-11361

D.C. Docket No. 1:18-cv-02725-MLB

_____

_____

No. 24-11362

Non-Argument Calendar

_____

LATOYA BECTON,
LATISHA BLAKE,
SHANETRIA CAMERON,
DONJANAE GRANT,
SHELDON HAILEY, et al.,

                                           Plaintiffs-Appellees,

*versus*

WBY, INC.,
a.k.a. Follies,
STEVEN YOUNGELSON,
SURREY WHITE,

                                           Defendants-Appellants,

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:16-cv-04003-MLB

_____

Before JORDAN, LUCK, and MARCUS, Circuit Judges.

PER CURIAM:

On appeal are the district court's awards of attorneys' fees incurred by three law firms: Dudley Law, LLC ("Dudley"), Jones & Walden LLC ("J&W"), and Flynn Law Firm, LLC ("Flynn"). The fees were awarded in two cases brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") -- *Becton et al. v. WBY, Inc. et al.*, No. 1:16-cv-4003-MLB (N.D. Ga.) ("*Becton*"), and *Barker et al. v. WBY, Inc. et al.*, No. 1:18-cv-2725-MLB (N.D. Ga.) ("*Barker*") -- by plaintiffs who were working or had worked as waitresses and/or entertainers at an adult entertainment establishment, Follies Strip Club ("Follies"), operated by defendants WBY, Inc. ("WBY"), which was owned by Surrey White ("White") and Steve Youngelson ("Youngelson"). In the underlying cases, the plaintiffs alleged they had been misclassified as independent contractors, depriving them of their rights to minimum wage, overtime compensation, and retention of their full tips. Their FLSA claims were resolved through settlements, after which the district court awarded plaintiffs' counsel attorneys' fees and costs under the FLSA.

On appeal, the defendants argue that the district court abused its discretion in: (1) failing to lower the lodestar amount based on the plaintiffs' partial success in the underlying actions; and (2) finding that the hours plaintiffs' counsel claimed were reasonable for the lodestar calculation. After thorough review, we affirm.

I.

The relevant background is this.  In February 2016, WBY filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia.  *In Re: WBY, Inc. a/k/a Follies*, No. 16-52291-JRS (Bankr. N.D. Ga.) ("*Follies* Bankruptcy").  In September 2016, forty-seven Follies entertainers and waitresses, represented by J&W and Dudley, moved the bankruptcy court to lift the automatic stay entered pursuant to 11 U.S.C. § 362 to file an FLSA action in federal district court.  On October 7, 2016, the bankruptcy court granted the movants relief from the automatic stay.

On October 24, 2016, WBY proposed a Plan of Reorganization ("Plan") in the *Follies* Bankruptcy, with proposed payments to creditors.  The Plan sorted claims and equity interests, offering all FLSA claimants a settlement with Follies (but not White or Youngelson) equal to 10% of their proof of claims; claimants who declined the 10% fell in Class C, while those who accepted it were in Class D.  Once the bankruptcy court approved the Plan, thirty Class D claimants accepted the offer and began receiving their 10%.

On October 26, 2016, LaToya Becton and several others from Follies filed suit under the FLSA against WBY, White and Youngelson in the United States District Court for the Northern District of Georgia.  In the complaint -- which the defendants repeatedly moved to dismiss and was amended a few times -- the *Becton* plaintiffs sought wages in "an amount to be determined at trial," liquidated damages in an equal amount, and reasonable attorneys' fees and costs.  After litigating a series of motions --

including a motion to disqualify the defendants' counsel that ended up barring her from testifying as a witness on good faith -- the parties engaged in heated discovery, necessitating three hearings where the defendants were ordered to release documents.  The defendants also tried three times, unsuccessfully, to relitigate the reserve account from the *Follies* Bankruptcy in district court.

On June 14, 2018, a different plaintiff, Soraya Barker, filed suit against WBY, White and Youngelson in the same district court. Twenty-nine then-current and former Follies entertainers and waitresses opted into the *Barker* case.  As in *Becton*, the defendants vigorously opposed the *Barker* plaintiffs' claims, filing, *inter alia*, an unsuccessful motion to dismiss, an unsuccessful opposition to class certification, an unsuccessful motion to stay, and unsuccessful emergency motions to relitigate the reserve account from the *Follies* Bankruptcy; they also had to defend against a default judgment, a motion for contempt, and a motion to disqualify, leading to the same limitation for defense counsel as in *Becton*.  And, as in *Becton*, the parties engaged in extensive discovery and discovery disputes.[1]

In 2023, the parties in *Becton* and *Barker* reached agreement on the terms of a settlement of the FLSA claims.  In the *Becton* settlement, 12 Class C plaintiffs received $236,078 and 30 Class D

---

[1] Meanwhile, as the *Barker* and *Becton* cases were winding their way through district court, the defendants continued their efforts in bankruptcy court to limit the plaintiffs' FLSA claims under the Plan, resulting in 13 hearings, all unsuccessful.  Follies then quit making payments to the reserve account and, in two contempt hearings, was ordered to pay over $60,000 in attorneys' fees.

plaintiffs received $153,450, plus 10% of their proof of claim from the *Follies* Bankruptcy, for a total of $701,213. In *Barker*, the plaintiffs settled for $624,962 in total. In both settlements, the parties agreed the recovery amount was fair and reasonable, despite incomplete wage records that had made it difficult to determine damages since the plaintiffs had been deemed independent contractors. Further, "[s]olely for purposes of determining attorneys' fees and costs in this action, the parties agree[d] that each of the Plaintiffs is a prevailing party within the meaning of 29 U.S.C. § 216."

The parties proceeded to litigating attorneys' fees. In *Becton*, the district court awarded fees on behalf of plaintiffs represented by Dudley and J&W. The fees covered time counsel spent pursuing and preserving plaintiffs' FLSA claims in both the district and bankruptcy courts, where Dudley served as employment counsel and J&W served as bankruptcy counsel. The district court awarded $689,850 in fees to Dudley. As for J&W, the district court decided to change course from a fee decision it had made in a related case -- *Smith v. WBY, Inc. et al.*, No. 1:16-cv-4017-MLB (N.D. Ga.) ("*Smith*"), in which J&W represented two other creditors in the *Follies* Bankruptcy -- and held that it "should have awarded J&W all its fees for that work." Thereafter, the district court awarded $433,422.73 in fees for services rendered by J&W in *Becton*.

In *Barker*, the district court awarded fees to Dudley and J&W for representing Barker in the *Follies* Bankruptcy; to Dudley, J&W and Flynn for representing Barker in district court; and to Dudley and Flynn for representing the twenty-nine opt-in plaintiffs in

district court. In total, the court awarded $359,700 in fees to Dudley and $100,640 in fees to Flynn. As for J&W, the court declined to award the "Global Class C Fee Request" since it had already done so in *Becton*, in order to "avoid[] a double recovery." For the remaining work in *Barker*, the court awarded $22,442.50 to J&W.

The defendants appealed the attorneys' fee awards in both *Becton* and *Barker*. We consolidated the two cases on appeal.

## II.

We review fee and cost awards for abuse of discretion, findings of fact for clear error, and questions of law *de novo*. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008). An abuse of discretion occurs when a district court makes a clear error of judgment, fails to follow a proper legal standard or decision-making process, or relies on clearly erroneous findings of fact. *Gray ex rel. Alexander v. Bostic*, 613 F.3d 1035, 1039 (11th Cir. 2010). This standard necessarily implies a range of choices, and we will affirm even if we would have gone the other way had it been our choice. *Id.*

Because fee and cost awards are essentially factual in nature, the district court's superior understanding of the litigation places it in the best position to calculate an award. *Cullens v. Ga. Dep't of Trans.*, 29 F.3d 1489, 1492–93 (11th Cir. 1994). However, while a district court "necessarily has discretion" in deciding the amount and reasonableness of an award, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), "that discretion is not without limits," *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). An "order on attorney's fees must allow meaningful review -- the

district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id.* at 1304.

### III.

First, the district court did not abuse its discretion in declining to lower the lodestar based on the plaintiffs' alleged lack of success. Under the FLSA, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant[s]." 29 U.S.C. § 216(b). "The starting point for determining the amount of a 'reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Bivins*, 548 F.3d at 1350 (quoting *Hensley*, 461 U.S. at 433). The resulting product is "the lodestar, which is strongly presumed to represent an appropriate attorney's fee." *Johnston v. Borders*, 36 F.4th 1254, 1278 n.40 (11th Cir. 2022).

According to our case law, the lodestar should be altered "in those rare circumstances in which [it] does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1164 (11th Cir. 2017); *see also Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993) (noting that "courts have severely limited the instances in which a lawfully found lodestar amount may be adjusted to a higher or lower level"). We've taken this to mean that "[w]hen the hours and rate are reasonable, a downward adjustment to a lodestar is merited only if the prevailing party was partially successful in its efforts." *Resolution Trust Corp.*, 996 F.2d at 1150. In performing this analysis,

however, the Supreme Court has rejected "'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon'" because this "ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors" and it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Hensley*, 461 U.S. at 435 n.40. So, we've noted that while "[a] comparison of damages sought to the damages received" is relevant in assessing the plaintiff's degree of success, the "'court may not employ a cash register approach in which setting a fee is merely an arithmetical function.'" *Yellow Pages Photos*, 846 F.3d at 1164. Partial success is determined on a case-by-case basis. *Bivins*, 548 F.3d at 1351 n.3.

Here, when the district court rejected the defendants' request to lower the lodestar, it did so on several bases: (1) in the settlement agreements, the defendants stipulated that the plaintiffs were "successful on all their FLSA claims"; (2) in light of the settlement agreements, "regardless of the actual amount [the plaintiffs] recovered, the fact they vindicated their rights under the FLSA is enough for the Court to find a downward adjustment inappropriate"; and (3) "having presided over this case for several years, the Court is keenly aware of how hard all the Plaintiffs' attorneys (including Dudley and J&W) worked on behalf of their clients."

As we see it, the district court did not abuse its discretion in awarding the lodestar fee in *Becton* and *Barker*. Not only is the lodestar "strongly presumed" to be reasonable, but the defendants have not shown that it was inappropriate. The district court began by

finding the defendants had stipulated that the plaintiffs prevailed "on all [of] their FLSA claims." To the extent the defendants claim the district court clearly erred in reaching this finding, we disagree. The settlement agreements stated: "Solely for purposes of determining attorneys' fees and costs in this action, the parties agree that each of the Plaintiffs is a prevailing party within the meaning of 29 U.S.C. § 216." Regardless of whether the defendants admitted liability in the settlement agreements or the form in which the plaintiffs received payments, the plaintiffs brought only FLSA claims for which they recovered a meaningful settlement amount, and the parties agreed the plaintiffs were "prevailing part[ies]" under the FLSA for purposes of "determining attorneys' fees and costs in this action" -- the very thing at issue today. We see no reason to read the language in their settlement agreements differently in this context.

As for the defendants' argument that the lodestar should have been reduced because the plaintiffs did not recover the full amount they requested, their pleadings did not request a particular amount. In fact, the difficulty of determining what plaintiffs sought or would have sought in these cases was complicated by the absence of reliable wage records, so wages were estimated by the parties at the settlement stage. And, in the settlement documents, "[t]he [p]arties agree[d] that the [settlement amount] is a fair and reasonable amount because determining the amount, if any, owed to the Plaintiffs will be difficult to prove in this lawsuit." *Cf. Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 254(a) (establishing a reduced

evidentiary burden for FLSA plaintiffs where the employer's records are inaccurate or inadequate and it is difficult to precisely calculate the plaintiffs' compensation).  With these uncertainties, we cannot say the district court abused its discretion in declining to reduce the lodestar amount based on the plaintiffs' success.

Nor did the district court abuse its discretion in recognizing an inherent value in enforcing the FLSA.  As we've explained:

> The FLSA was passed to protect certain segments of the population from substandard wages and excessive work hours. An unequal bargaining position with their employer rendered these employees incapable of protecting themselves, and Congress deemed their plight in the aggregate injurious to national health and efficiency.  The FLSA thus was conceived with a public and a private purpose: it established a set of individual rights that would create a healthier environment for all workers.

*Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178, 1180 (11th Cir. 1982).  To this end, Congress made attorneys' fees for prevailing *plaintiffs* mandatory under the FLSA -- unlike in other statutes, like Title VII of the Civil Rights Act, the Trust Indenture Act of 1939, the Securities Exchange Act of 1934, or the Clean Air Act, which "authoriz[e] the award of attorney's fees to either plaintiffs or defendants."  *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 415 & nn.5 & 7 (1978); 29 U.S.C. § 216(b).

Because Congress made attorneys' fees a required part of a prevailing FLSA plaintiff's relief and because the defendants here agreed the plaintiffs were entitled to fees, the plaintiffs' victory -- and the district court's recognition of their counsel's hard work -- must mean something.  *See id.*; *see also Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994) ("Courts should not place an undue emphasis on the amount of the plaintiff's recovery [in an FLSA case] because an award of attorney fees here encourages the vindication of congressionally identified policies and rights.") (persuasive authority).  Accordingly, the district court did not abuse its discretion in declining to lower the lodestar amount.[2]

---

[2] In their reply brief, the defendants discuss a slew of cases that are distinguishable.  For example, they cite civil rights act cases, like *Farrar v. Hobby*, 506 U.S. 103 (1992), to say that a district court, when awarding fees in a case that primarily sought "recovery of private damages . . . , is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."  *Id*. at 114 (citation modified); *see also Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987).  But as we recognized in *Popham*, many factors are at play in an attorneys' fees decision, and "the weight given to such considerations rests in the discretion of the district court."  820 F.2d at 1580.  Indeed, *Farrar* and *Popham* were not FLSA cases, they involved one or two plaintiffs suing governmental bodies, and they won under 2% of the damages sought (in *Farrar* the plaintiff won nominal damages of one dollar).

The defendants next cite *Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934 (11th Cir. 2020), which held that post-settlement-offer costs can be taxed under Federal Rule of Civil Procedure 68 even in FLSA cases and noted that the plaintiff there had not acted in the public interest by rejecting the defendant's offer.  But Rule 68 is not at issue here; the plaintiffs accepted the settlement offer.  So, if anything, the *Becton* and *Barker* plaintiffs acted in favor of

IV.

Nor do we agree with the defendants that the district court abused its discretion in calculating the time component of the lodestar. In documenting the time spent on a case, fee applicants must exercise "'billing judgment,'" *Hensley*, 461 U.S. at 437, and must exclude those hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," *Norman*, 836 F.2d at 1301. Then, when the district court is calculating reasonable hours expended, it uses its discretion to exclude "excessive or unnecessary work on given tasks." *Id*. If "a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350. Where the billing records are "voluminous," "an hour-by-hour review is simply impractical and a waste of judicial resources." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).

The fee applicants -- here, the *Becton* and *Barker* plaintiffs -- "bear[] the burden of establishing entitlement to an award and

---

"the public benefit of vindicating an employee's rights under the [FLSA]." *Id*. at 941.

They also cite *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010), to argue that fee awards will discourage settlements since defendants "will have no way to estimate the likelihood of having to pay a potentially huge enhancement." *Id*. But, unlike here, *Perdue* involved an *enhancement* to the lodestar.

documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Nevertheless, "[t]hose opposing fee applications have obligations, too. In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999); *Norman*, 836 F.2d at 1301 ("Generalized statements that the time spent was . . . unreasonable . . . are not particularly helpful . . . . As the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents."). "The level of specificity required by district courts is proportional to the specificity of the fee opponent's objections." *In re Home Depot Inc.*, 931 F.3d 1065, 1089 (11th Cir. 2019). "The more specific the objections to a fee application are, the more specific the findings and reasons for rejecting those objections can be." *Id.* (citation modified).

The record in this case reflects that the district court began by carefully reviewing the plaintiffs' attorneys' billing records and the hours assigned to each task. The court found that Dudley's, Flynn's and J&W's time records provided "detailed" descriptions of the work they performed. *See Norman*, 836 F.2d at 1303 (fee applicant's time records should "show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity").

Where the defendants took issue with particular line items, the district court addressed each in turn. Several objections questioned why particular tasks were important to the litigation. In this vein, the defendants objected -- and repeated their objections on appeal -- to, *inter alia*: Dudley's time spent opposing Follies' emergency motion to modify the Plan and a "second Motion for Clarification and to Modify Plan"; Dudley and J&W's "claims estimation work"; Dudley's time spent on bankruptcy work after October 29, 2019; Dudley's time spent on discovery, mediation and numerous other services in bankruptcy court; Dudley's time spent opposing the defendants' motions to modify the reserve account and the Plan in district court; and Dudley and Flynn's time spent on the *Barker* plaintiffs' "Motion for Conditional Certification." For each objection, the court explained why the work was necessary to the litigation, oftentimes because it protected the plaintiffs' ability to collect damages or to secure attorneys' fees, which the district court considered an "'integral part of the merit of FLSA cases and part of the relief sought therein.'"[3] The district court did not abuse its discretion in finding this time to be necessary or reasonable.

Other objections from the defendants argued that certain fees were duplicative. Where those objections were specific, the district court considered them and explained where the plaintiffs'

---

[3] As for the time spent on the *Barker* plaintiffs' "Motion for Conditional Certification," the district court found that counsel's reasons for not issuing notice to the class was justifiable and their work on this issue was reasonable. We agree.

counsel had already agreed to reduce those fees -- including, for example, J&W's fee requests for its post-June 2021 work. In other instances, where the defendants' objections on redundancy were vaguer, the court gave reasons for dismissing the objections, explaining that "while Defendants claim there are dozens of duplicative time entries, they don't actually itemize such entries or even tell the Court what they are." The district court did not abuse its discretion in proceeding in this way. *See In re Home Depot Inc.*, 931 F.3d at 1089; *ACLU*, 168 F.3d at 428; *Gray*, 125 F.3d at 1389; *Norman*, 836 F.2d at 1301.

Indeed, the district court recognized several areas where the defendants failed to make specific objections. For example, as for the defendants' objection to J&W's work on FLSA claims in district court, the court said the defendants "failed to identify specific time entries," even though they did line-by-line assessments elsewhere that were "not too cumbersome." On the merits, the court found that "J&W's time entries provide detailed descriptions of the FLSA work they performed, and the Court sees no obvious problem with those entries." The court also found some objections to Dudley's work -- which the defendants attacked, generally, as "facially excessive," "voluminous," and not "critical" -- to be "conclusory" and "not enough to carry Defendants' burden to counter Dudley's detailed time records." The court concluded: "[I]t's no surprise Dudley spent a lot of time on the bankruptcy, given that it lasted 7 years and dealt with dozens of claimants. Given Defendants' lack of specificity, the Court declines to find the time Dudley spent on the bankruptcy work was generally unreasonable."

Like the district court, we find many of the defendants' arguments -- both in district court and on appeal -- to be too generalized to decipher; sometimes they even cut and paste arguments they made in district court without updates despite more recent developments in the proceedings.  Moreover, to the extent the defendants complain the district court's fees analysis was fatally "impressionistic," we find it to be so only in response to equally "impressionistic" complaints from the defendants.  *See In re Home Depot Inc.*, 931 F.3d at 1089; *ACLU*, 168 F.3d at 428; *Gray*, 125 F.3d at 1389.

In short, we are satisfied that the district court carefully resolved each of the defendants' cognizable objections to the billing records.  Where the court spoke broadly, the defendants' objections were overly broad.  We cannot say the district court abused its considerable discretion in parsing the time entries or the defendants' objections to them.  Accordingly, the district court did not abuse its discretion in calculating the time component of the attorneys' fees awards, and we affirm.

**AFFIRMED.**